UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| MILTON LUE PRINCE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 4:16-cv-00098-TAB-RLY |
| | ) |
| NANCY A. BERRYHILL Acting | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## **ORDER**

### I.     Introduction

Plaintiff Milton Lue Prince appeals the Administrative Law Judge's denial of her application for Social Security disability benefits. Prince's appeal argues (1) the ALJ failed to correctly determine Prince's residual functional capacity based on the record; (2) the ALJ failed to give the correct deference and weight to the examining physician's findings; (3) the ALJ incorrectly evaluated the credibility of Prince's statements regarding pain; and (4) the ALJ committed harmful error by failing to investigate apparent conflicts between the testimony of the vocational expert and the Dictionary of Occupational Titles. For the reasons set forth below, Prince's brief in support of appeal [Filing No. 15] is denied, and the decision of the Commissioner is affirmed.

### II.     Background

Prince alleges her disability began on January 3, 2013. Her claim for benefits was denied originally and upon reconsideration. On December 2, 2014, following a hearing, the ALJ concluded Prince is not disabled.

At step one, the ALJ found Prince has not engaged in any substantial gainful activity since the alleged onset date of the disability. At step two, the ALJ found Prince suffered from multiple severe impairments, including cervical spine disorder associated with right arm pain, lumbar spine disorder associated with right hip pain, right ulnar disorder, depression, and anxiety. At step three, the ALJ found that the combination of impairments did not meet or equal a listing. At step four, the ALJ concluded Prince has the RFC to:

> perform a full range of light work as defined in 20 CFR 404.1567(b), except the claimant must avoid all climbing ladders, ropes, and scaffolding and is limited to occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling. The claimant must not perform constant right upper extremity reaching, handling, fingering, and feeling tasks, and must not perform any overhead reaching tasks. Additionally, the claimant must avoid all dangerous work hazards (including unprotected heights and exposed machinery). Because of pain and mental health distractions preventing detailed decision-making, the claimant is limited to routine, uninvolved tasks not requiring a fast assembly quota pace.

[Filing No. 13-2, at ECF p. 17.] Using this RFC, the ALJ concluded that Plaintiff is unable to perform any past relevant work. [*Id.* at p. 22.] However, a VE testified that Prince can perform the work of an inspector/hand packager, assembly machine tender, or injection molding machine tender. [*Id.*] At step five, the ALJ relied on the VE's testimony to conclude Prince is not disabled. The Appeals Council denied Prince's request for review, and this appeal followed.

### III. Standard of Review

This Court reviews decisions of the ALJ deferentially, and must uphold it if supported by substantial evidence. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). Substantial evidence requires only such evidence "as a reasonable mind might accept as adequate to support a

2

conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120 (7th Cir. 2014). However, the ALJ may not ignore evidence contrary to her finding, and the ALJ must consider all of the relevant medical evidence. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). In doing so, the ALJ should confront conflicting evidence and explain her reasons for rejection. *Moore*, 743 F.3d at 1123. However, this does not require the ALJ to mention every piece of evidence used to reach her conclusion. *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). Instead, the ALJ's opinion must only use the evidence to the extent that it builds a logical bridge between the evidence and the conclusion. *Id.*

## IV. Discussion

### A. Mental Residual Functional Capacity Determination

Prince argues the ALJ failed to adequately determine her RFC based on the mental health evaluations and findings. Prince asserts that the RFC fails to adequately include the finding of her deficiencies in concentration, pace, and persistence. [Filing No. 15 at ECF p. 21.] Prince contends the ALJ determination that she could work "routine, uninvolved tasks not requiring a fast assembly quota pace" is erroneous because she did not provide a detailed assessment of the evidence. [Filing No. 13-2, at ECF p. 18.]

The Commissioner argues the RFC reflecting Prince's mental health limitations is supported by substantial evidence, and includes a sufficient explanation by the ALJ. [Filing No. 21, at ECF p. 3.] The Commissioner asserts that the ALJ's RFC determination evaluated and included all mental limitations described in the record. The Commissioner argues the RFC is sufficiently detailed and supported, and that Plaintiff is attempting to read restrictions into the record that never existed. [Filing No. 21, at ECF p. 4.]

3

The ALJ's mental RFC is not erroneous. The RFC must describe the most work Prince is able to do despite her limitations. 20 C.F.R. § 404.1545. Specifically, a mental RFC requires the ALJ to give a "detailed assessment of the individual's capacity to perform and sustain mental activities which are critical to work performance." SSR 85-16. All limits on work-related activity resulting from mental impairments must be described in the mental RFC. *Id.* However, this does not require the ALJ to address every medical finding. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010). It is sufficient for the ALJ to rely on a physician's narrative describing their findings as a mental RFC so long as the RFC adequately addresses their concerns. *See Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015).

In the RFC, the ALJ found Prince "has moderate limitations regarding concentration" and limited her to "routine, unskilled work not requiring a fast assembly quota pace." [Filing No. 13-2, at ECF p. 22.] The ALJ supported this determination with evidence provided by state agency psychological consultants, Dr. Hill and Dr. Neville, who provided detailed narrative descriptions of Prince's mental limitations. Specifically, Dr. Hill and Dr. Neville explained that Prince's "attention/concentration are moderately impacted but appear reasonable for semiskilled tasks." [Filing No. 13-3, at ECF p. 12, 38.] Furthermore, both narratives found Prince could "relate on at least a superficial basis . . . with co-workers and supervisors" as well as "understand, remember, and carry out semiskilled tasks." [*Id.*] These narratives coincide with the ALJ's RFC determination that Prince was moderately affected in her ability to pay attention and concentrate. [*Id.*]

The ALJ also relied on the narrative explanation of consultative psychologist Dr. Doup in her RFC determination. Dr. Doup provided a narrative description of Prince's symptoms, noting they are consistent with major depressive disorder and generalized anxiety disorder. [Filing No.

4

13-8, at ECF p. 51.] Like the state psychologists, Dr. Doup assessed limitations on concentration and attention based on Prince's depression and anxiety, and opined that Prince would not have difficulty receiving complex instructions, interacting with co-workers, or handling routine changes in the work place. [Filing No. 13-8, at ECF p. 52.]

The ALJ's RFC determination relied on the narratives of the state psychologists and Dr. Doup. The ALJ "afforded significant weight to the State agency psychological consultants' assessments," noting Prince's difficulties with concentration, persistence and pace. [Filing No. 13-2, at ECF p. 21.] Furthermore, the ALJ gave "some weight" to the findings of Dr. Doup, specifically that Dr. Doup diagnosed Prince with depressive disorder and generalized anxiety disorder. [*Id.* at ECF p. 22.] Relying on Dr. Doup's findings, the ALJ concluded that Prince's difficulty concentrating limited her from working in fast-paced skilled jobs that might require detailed decision making. [*Id.*] By evaluating and relying on these doctor's narratives, the ALJ included limitations in the RFC. The doctor's narratives give detailed descriptions of Prince's work limitations. Thus, the ALJ did not merely give the conclusory limitation of "simple, repetitive work," as Prince contends. [Filing No. 15, at ECF p. 22.] Instead, the ALJ gave a detailed mental RFC limitation that "[b]ecause of pain and mental health distractions preventing detailed decision-making, the claimant is limited to routine, uninvolved tasks not requiring a fast assembly quota pace." [Filing No. 13-2, at ECF p. 18.] Overall, the ALJ's analysis of the detailed medical opinions led her to form a mental RFC that is neither conclusory or deficient. Thus, remand is not appropriate on this issue.

### B. Physical Residual Functioning Capacity Determination

Plaintiff argues the ALJ (1) constructed a factually inaccurate RFC and (2) incorrectly weighed the differing physician's opinions. Prince's arguments are unpersuasive.

*1. Factual Accuracy*

Prince argues the ALJ's RFC determination is factually inaccurate because the RFC finding of light work fails to account for the medical assessments of Dr. Wunsch and Dr. Fish. [Filing No. 15, at ECF p. 19.] The Commissioner responds that the ALJ correctly accounted for all medical opinions in her conclusion. The Court agrees with the Commissioner.

The ALJ formulated a factually consistent RFC using available medical evidence, including opinions from Dr. Wunsch and Dr. Fish. The ALJ found Prince has the "[RFC] to perform a full range of light work . . . except the claimant must avoid all climbing, ladders, ropes, and scaffolding and is limited to occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling." [Filing No. 13-2, at ECF p. 18.] The ALJ also limited Prince in her ability to use her upper extremities and to stand/walk for extended periods of time. [*Id* at p. 20.] The ALJ reached this conclusion by evaluating records provided by Prince's physicians dating back to 2012. Dr. Weidenbener evaluated Prince for right hip and buttock pain and ultimately refilled her muscle relaxer prescription. [Filing No. 13-8, at ECF p. 22.] Dr. Worster also treated Prince for lower back issues and administered a cortisone shot to help with the continuing pain. [*Id.* at p. 22.] Following this shot, Prince began seeing Dr. Mackay for further pain management treatment. [*Id.* at p. 34.]

The ALJ considered RFC assessments provided by medical consultant Dr. Wunsch, who opined that Prince was only capable of occasionally lifting ten pounds, standing for two hours a day, and sitting for six hours a day. [Filing No. 13-3, at ECF p. 8-9.] Dr. Wunsch concluded

Prince's "fine motor skills are severely compromised due to weakness in the right upper extremity" and "the claimant is not able to compensate very well using her left hand for the right." [*Id.* at p. 11.] The ALJ also considered the assessment of Prince's examining physician Dr. Fish, who concluded Prince's medical issues would likely impact her functioning "to [a] significant degree." [Filing No. 13-8, at ECF p. 56.] Dr. Fish's medical source statement limited Prince to standing/walking for two hours and carrying ten pounds "only in the left upper extremity." [*Id.*]

The ALJ incorporated and explicitly mentioned all of these findings in the RFC determination. This undermines Prince's argument that the ALJ ignored these physicians. The ALJ relied on records provided by Dr. Weidenbener, Dr. Worster, Dr. Mackay, and Dr. Fish, to conclude that Prince is limited to performing a "full range of light work" with limitations for "over head reaching with limitation for reaching, handling, fingering, and feeling with the right upper extremity." [Filing No. 13-2, at ECF p. 18, 20.] Even more, the ALJ discussed opinions by these doctors to conclude that "[t]he medical evidence of record supports a finding for some limitations in the ability to stand/walk for extended periods and use her right upper extremity but the objective physical evidence in this case does not support greater limits than addressed in the residual functioning capacity . . . ." [Filing No. 13-2, at ECF p. 20.] Although the ALJ afforded some opinions little weight, the ALJ confronted this evidence and incorporated the findings into Prince's RFC. The ALJ considered the relevant medical evidence and confronted the facts that Prince argues are contradictory. Thus, remand is not appropriate.

### 2. *Weight of Physician's Opinions*

Prince argues the ALJ erroneously afforded little weight to the opinion of agency examining physician Dr. Fish by failing to provide good, specific, and supported reasons for her

7

determination.  [Filing No. 15, at ECF p. 18.]  Prince asserts that the ALJ's only reason for affording little weight to Dr. Fish is that a treating physician found Prince was pain free.  [*Id.*]  Prince also asserts that Dr. Wunsch's opinion supports affording more weight to Dr. Fish.  [*Id.* at 19.]  The Commissioner contends the findings of other agency physicians were more consistent with the record and "eclipsed the highly restrictive and unsupported findings of Dr. Fish."  [Filing No. 21, at ECF p. 6.]  The Commissioner argues the Court should defer to the ALJ's weight determination.

The ALJ provided sufficient reasoning for the weight she gave to the medical opinion of Dr. Fish.  The ALJ is tasked with resolving issues between conflicting medical opinions by deciding what weight to afford to each.  *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).  Although the medical opinion of an examining source is generally afforded more weight than the opinion of a source who has not examined the plaintiff, these opinions are not entitled to controlling weight like a treating source.  20 C.F.R. 404.1527(c); *White v. Barnhart*, 415 F.3d 654, 658 (7th Cir. 2005).  The Court does not reweigh the medical evidence and will only reverse the ALJ's determination if it is not supported by susbstantial evidence.  *Pepper v. Colvin*, 712 F.3d 351, 361-62 (7th Cir. 2013).

The ALJ afforded little weight to the opinion of Dr. Fish, and found Prince capable of "a full range of light work," with restrictions.  [Filing No. 13-2, at ECF p. 18, 21.]  Dr. Fish, the examining physician, concluded Prince's upper and lower body functioning is impaired to a "significant degree," limiting her to standing and walking two hours of the day and carrying ten pounds only in the left upper extremity.  [Filing No. 13-8, at ECF p. 56.]  Dr. Fish also found progressive weakness in the right upper extremity, which the ALJ noted was absent from any of the treating physicians' reports.  [Filing No. 13-8, at ECF p. 56; Filing No. 13-2, at ECF p. 21.]

Similarly, Dr. Wunsch provided an opinion giving much stricter limitations than that of the ALJ and other agency physicians. Dr. Wunsch concluded that Prince could only stand for two hours and frequently lift less than ten pounds. [Filing No. 13-3, at ECF p. 9.]

However, Dr. Singh and Dr. Corcoran found Prince less physically limited than Dr. Fish and Dr. Wunsch. Dr. Singh provided an evaluation disagreeing with Dr. Wunsch's RFC determination, and specifically took issue with Dr. Wunsch's conclusions on Prince's exertional limitations, postural limitations, manipulative limitations, and environmental limitations. [Filing No. 13-8, at ECF p. 75-76.] Dr. Singh evaluated the evidence and concluded that Dr. Wunsch's findings were not supported by the record. [*Id.* at p. 76.] Similarly, Dr. Corcoran concluded from a review of Prince's medical records that she could stand and walk for six hours and could occasionally lift twenty pounds and frequently lift ten pounds. [Filing No. 13-3, at ECF p. 35.] This evidence supports the ALJ's conclusion.

Furthermore, Dr. Weidenbener noted in a 2014 follow up that Prince was "doing much better" and found her "almost pain free." [Filing No. 13-9, at ECF p. 41.] Dr. Weidenbener also remarked on separate occasions that Prince's flexion and rotation continued to show improvement. [*Id.* at ECF p. 41-42.] The ALJ also considered evidence pertaining to Prince's ability to perform daily activities. Prince claimed to have the ability to cook, clean, do laundry, feed pets, and care for grandchildren in her function report. [Filing No. 13-6, at ECF p. 28-29.] Prince's husband noted in his third-party function report that Prince takes care of her granddaughter full time and watches a different granddaughter 2 to 3 hours twice weekly. [*Id.* at ECF p. 38.]

The ALJ was not required to give Dr. Fish, a non-treating physician, controlling weight. The ALJ explained that Dr. Fish's opinion is not consistent with the record. Prince's contention

that the ALJ was required to consider that Dr. Fish is a specialist is misplaced because Dr. Fish is not a treating physician. *See Roddy v. Astrue*, 705 F.3d 631, 637 (7th Cir. 2013) (explaining that specialization is a factor considered under the treating physician rule). The ALJ acknowledged Dr. Fish is an examining physician, but found that objective evidence in the record that did not support Dr. Fish's findings. [Filing No. 13-2, at ECF p. 21.]

The ALJ particularly took issue with the consistency and supportability of Dr. Fish's conclusions. Although Dr. Fish found severe restrictions in Prince's range of motion of the right upper extremity, the ALJ noted that "the claimant's treating physicians reported no such findings." [*Id.*] Furthermore, Dr. Fish's findings of severe pain and movement limitations conflict with Dr. Weidenbener's more recent claim that Prince "is almost pain free." [*Id.*] The ALJ also noted the inconsistency of Dr. Fish's finding of upper extremity limitations with Prince's self-reported ability to perform a variety of household activities. [*Id.*] These activities all "involve significant use of the upper extremity" and conflict with Dr. Fish's conclusion. [*Id.*] Instead, the ALJ found the evidence was more in line with the less severe limitations described by state consulting physicians Dr. Singh and Dr. Corcoran. [*Id.*] The ALJ therefore concluded that Dr. Fish's opinion should be afforded little weight. By analyzing the evidence in determining the weight of Dr. Fish's opinion, the ALJ supported her conclusion. Thus, remand is not appropriate on this issue.

### C. Credibility Determination

Prince argues the ALJ committed error by failing to consider her prior work history in her credibility determination. [Filing No. 15, at ECF p. 23.] The ALJ may consider objective medical evidence, the Plaintiff's own statements, and other relevant evidence including work history to formulate a sufficiently clear credibility determination supported by substantial

10

evidence. 20 C.F.R. § 404.1529; *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006); S.S.R. 96-7p, 1996 WL 374186 (July 2, 1996). The Court affords special deference to the ALJ's credibility finding and will uphold the decision unless it is patently wrong. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2012).

The ALJ found Prince's statements regarding the intensity, persistence, and limiting effects of her symptoms "not entirely credible for the reasons explained in this decision." [Filing No. 13-2, at ECF p. 19.] The ALJ reached this conclusion by evaluating Prince's subjective claims of pain. Prince's functioning report described difficulty performing normal activities including showering, preparing food, and getting dressed. [Filing No. 13-6, at ECF p. 61-62.] Prince also claimed walking for longer than ten minutes or sitting for thirty minutes causes "shooting pain." [*Id.* at p. 66.] Prince claims this pain stops her from playing with her grandchildren. [*Id.* at p. 68.] Prince elaborated on her pain at the ALJ hearing, describing it as stopping her from picking up her grandchildren, lifting a skillet to cook food, and standing for longer than fifteen minutes. [Filing No. 13-2, at ECF p. 42.]

The ALJ found these statements were not credible when compared to evidence from other sources. Medical evidence provided by Dr. Weidenbener indicated Prince was "almost pain free," and flexion and rotation had improved in her upper extremities. [Filing No. 13-9, at ECF p. 41.] Prince also told Dr. Weidenbener that things feel "markedly improved." [*Id.*] Prince's own statements raised additional concerns about her credibility. Prince testified before the ALJ that she lives with one granddaughter and helps take care of her. [Filing No. 13-2, at ECF p. 34.] Prince stated she currently has custody of this grandchild and provides care for her. [*Id.*] Prince's husband also provided a functioning report that Prince takes care of one granddaughter full time and another granddaughter two to three hours, two days a week. [Filing

11

No. 13-6, at ECF p. 38.] He further indicated Prince is able to cook some meals, and performs household chores including dishes, laundry, and vacuuming. [*Id.* at p. 40.] These statements conflict with Prince's assertions in her functioning report.

While the ALJ did not reference Prince's work history in the credibility determination, she did not need to. The ALJ relied on other evidence to support her conclusion. Although Prince claimed chronic pain left her unable to perform basic activities, evidence on the record demonstrates otherwise. The ALJ concluded that Prince's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . ." [Filing No. 13-2, at ECF p. 19.] Without explicitly mentioning Prince's work history, the ALJ provided substantial evidence to provide a sufficiently clear credibility determination. The ALJ's credibility determination is not patently wrong, and remand is not appropriate.

**D. Testimony of the Vocational Expert**

Prince argues the ALJ failed to resolve apparent conflicts between the VE's testimony and the DOT. First, Plaintiff argues the RFC description restricting her from making detailed decisions conflicts with the VE's testimony that Prince could perform occupations with a GED reasoning level of two. [Filing No. 15, at ECF p. 5.] Second, Prince argues the RFC restricting her from performing fast assembly paced occupations conflicts with the VE's testimony that Prince could work as an inspector/hand packer, injection-molding machine tender, or an assembly machine tender. The Commissioner contends there are no apparent conflicts that would require a resolution from the ALJ.

The ALJ is only required to elicit a reasonable explanation for an apparent conflict between the VE's testimony and the DOT. S.S.R. 00-4p, 2000 WL 189704 (Dec. 4, 2000); *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008). If a plaintiff fails to raise concerns at the

time of the hearing, the ALJ is only required to resolve conflicts "obvious enough that the ALJ should have picked up on them without any assistance . . . ." *Overman*, 546 F.3d at 463. Courts have not found apparent conflicts where evidence matches the description of the occupation given by the VE. *Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009).

   *1. GED Reasoning Level*

The ALJ presented the VE with a hypothetical person of Prince's age, education, and work background who could perform a full range of light work activities with limitations including: avoiding ladder, rope, and scaffolding climbing, avoiding overhead reaching and constant forward reaching, handling, and fingering tasks with the right upper extremity; and avoiding work that requires detailed decision making. [Filing No. 13-2, at ECF p. 47.] The hypothetical person was also limited to performing routine, uninvolved work tasks and must avoid a fast assembly quota pace.[1]

Considering these specific limitations, the VE testified Prince is capable of performing the work of an inspector/hand packager, assembly machine tender, or an injection molding machine tender. These occupations all require a GED reasoning level of two, which requires the individual to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." Dictionary of Occupational Titles App'x C, *available at* http://www.occupationalinfo.org/appendxc_1.html#Ill.

Prince argues the hypothetical presented to the VE describing an inability to perform tasks involving detailed decision making conflicts with the VE's testimony that Prince can

---

[1] The ALJ included the "fast assembly pace" language in the RFC, but it is not found in the hearing transcript. However, the Commissioner asserts this portion of the hypothetical was inaudible and therefore not directly included. Prince does not contest this assertion.

13

perform jobs requiring her to carry out detailed instructions. However, Prince failed to raise this concern during the administrative hearing, and there is no apparent conflict in this language.

There is a difference between carrying out detailed instructions and individually making detailed decisions. The ALJ had no reason to further inquire into this alleged discrepancy because these requirements are not in direct conflict. Even if the Court were to accept this tenuous argument, evidence indicates Prince meets the requirements for a GED reasoning level of two. Prince stated she had "no problem" carrying out written instructions given in steps. [Filing No. 13-6, at ECF p. 66.] Psychologist Dr. Doup also concluded Prince would have no difficulty learning, remembering, and comprehending simple instructions. [Filing No. 13-8, at ECF p. 52.] The GED reasoning level two description is consistent with these findings and is not in apparent conflict with the hypothetical posed to the VE. Thus, remand is not appropriate.

   *2. Assembly Pace*

The ALJ concluded Prince's mental health distractions limit her to "routine, uninvolved tasks not requiring a fast assembly quota pace." [Filing No. 13-2, at ECF p. 18.] The VE used these limitations to conclude Prince could perform the work of an inspector and hand packager, assembly machine tender, and injection-molding machine tender. [*Id.* at p. 48.] The DOT description of these occupations includes assembly production characteristics. For example, the job of assembly machine tender includes "assembl[ing] components into plastic products" and "[p]osition[ing] plastic bottles or components on [a] conveyor." Dictionary of Occupational Titles § 754.685-014, *available at* http://www.occupationalinfo.org/75/754685014.html.

There is no apparent conflict between the limitation of avoiding a fast assembly quota pace and the DOT descriptions. The Court agrees with Prince that these occupations are "assembly, production pace jobs." [Filing No. 15, at ECF p. 7.] However, the hypothetical

14

posed to the VE includes a more restrictive "fast assembly quota pace" limitation. [Filing No. 13-2, at ECF p. 48.] This does not preclude Prince from performing the production paced jobs described by the VE and DOT. Because this parsing of words does not amount to a conflict, the ALJ had no reason to acquire additional information from the VE. Thus, remand is not appropriate.

**V.     Conclusion**

The ALJ provided substantial evidence to support her RFC determination. The ALJ explained how she weighed the differing physicians' opinions. The ALJ also provided substantial evidence to support her credibility finding. Finally, Prince fails to identify meaningful conflicts between VE testimony and DOT descriptions. For these reasons, Prince's brief in support of appeal [Filing No. 15] is denied, and the Commissioner's decision is affirmed.

Date:  6/29/2017

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

Hannalore B. Merritt
OSTERHOUT DISABILITY LAW, LLC
hannalore@mydisabilityattorney.com

Karl E. Osterhout
OSTERHOUT DISABILITY LAW, LLC

karl@mydisabilityattorney.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov